NEW JERSEY CENTRAL TRACTION COMPANY, PROSECUTOR, v. THE BOARD OF PUBLIC UTILITY COMMISSIONERS, RESPONDENT.

Argued October 29, 1920—Decided May 5, 1921.

1. In determining whether a rate of fare proposed by a public utility is unjust and unreasonable, the board of public utility commissioners may properly take into consideration the safety, sufficiency and adequacy of the service rendered.

2. Since the board of public utility commissioners has, by statute, authority to direct a street railway company to make its road safe and to furnish sufficient and adequate service, it follows as a logical sequence that when the board finds that its order has not been complied with, it must have the implied power to deny a hearing until its order has been obeyed.

On *certiorari.*

FEBRUARY TERM, 1921. 91

*96 N. J. L.* N. J. Central Trac. Co. v. Public Utility Bd.

Before Justice KALISCH, pursuant to the statute.

For the prosecutor, *William M. Wherry* and *H. B. Gill.*

For the public utility commission, *L. Edward Herrmann.*

For the municipalities, *Howard W. Roberts* and *Leo Goldberger.*

The opinion of the court was delivered by

KALISCH, J. An order was made by the respondent on the 29th day of June, 1920, denying the petition of the prosecutor theretofore filed by it to approve an increase in the fare charged by it from seven cents per fare zone to ten cents per fare zone, the rate to become effective on April 15th, 1920. The validity of this order is challenged by the prosecutor and is brought before the court for review.

It appears that prior to August 29th, 1918, a rate of five cents per fare zone had been charged by the company. On that date the prosecutor was permitted by the respondent to file a schedule of rates providing for a war surcharge of one cent to the then existing five-cent fare.

The respondent at the time of permitting this increase, in its report, said · "The evidence shows that the service, both as to the operating schedule and as to maintenance, is not what it should be. Under such conditions of operation it cannot be maintained that the value of the service to the rider is equal to that where safe, adequate and proper service is afforded * * * the service is not yet what it should be and the board will make in its conclusions several requirements tending to improve this service."

The prosecutor accepted the permission and filed the schedule, in accordance therewith, which went into effect on September 6th, 1918. It further appears that pending the proceedings referred to, the prosecutor made a second application for a further increase in the then existing rates from five cents per zone to eight cents per zone with a charge of two cents additional for each initial transfer. This second appli-

cation came on for a hearing, and the respondent by its report and order dated December 5th, 1918, denied the increase applied for, but permitted the prosecutor to charge seven cents in each zone where a charge of six cents was theretofore permitted.

Again the respondent said: "The service furnished by the company has been the subject of much complaint during the year. In the former report granting the increase in fare to six cents, the board called attention to the unsatisfactory character of the service. The board said: 'Under such conditions of operation it cannot be maintained that the value of the service so rendered is equal to that when safe, adequate and proper service is afforded.'"

Subsequent to this action of the board it was developed by the testimony that nothing was practically done by the prosecutor to render a service in the operation of its road which was safe, adequate and proper service. The testimony tended to show that there were numerous interruptions in service during the month of October; that the power station equipment was of insufficient capacity and undependable in furnishing requisite power for the operation of the line, resulting in long delays and inconvenience to the traveling public, and in preventing the prosecutor from operating for a long period a sufficient number of cars to properly handle the ordinary daily traffic. It seems from the testimony that it was not seriously contended by the prosecutor that the service was up to the standard, and that the excuse offered by the prosecutor for the conditions which then prevailed was that they were due to the war, &c., and that it was the intention of the prosecutor to remedy the defects which had been complained of.

It further appears that on May 5th, 1919, a report was made to the respondents of the physical conditions of the prosecutor's railway property, a copy of which report was served on the prosecutor, by which it appeared that the condition of certain of its property, particularly the portions of the track and roadbed to be such as to necessitate immediate repairs in order that safe, proper and adequate service might be furnished over such portions of such systems. Upon this report

a hearing was had on May 29th, 1919, and resulted in the finding of the board, on July 10th, 1919, as follows:

"The record in this matter shows that the conditions of certain of the property of the Jersey Central Traction Company, particularly as regards portion of its track and roadbed, is not such as to insure safe, adequate and proper service. It also appears that the company is not in a financial condition to readily make all the repairs to its property which are necessary in order that it may furnish safe, proper and adequate service." It is essential, however, that the company shall make such repairs to its property so that danger to life and limb cannot result from the operation of the cars over its tracks because of defective equipment.

The board having in mind the entire situation as evidenced by the record finds and determines that—

"The Jersey Central Traction Company, in order to render safe service and complete and maintain its property and equipment in condition to enable it so to do, should, at least, make the following repairs to its track and roadway:

"*Chatawan-Keyport Division:* 1. Replace all broken and worn out rails. 2. Repair, raise and make smooth all uneven and low or otherwise defective rail joints and renew all decayed ties located at rail joints.

"*Belford Avenue, Belford, and First Avenue, Atlantic Highlands:* 3. Replace all broken and worn out rails. 4. Raise and make smooth or otherwise repair as may be necessary all low or uneven joints. 5. Properly ballast the ties at all joints and other places where repairs are made.

"*Keyport-Perth Amboy Division:* 6. Raise the track to its proper level at the approaches to the bridge across Matewan creek near Keyport. 7. Resurface the special work at and in the vicinity of Davidson street and Smith street, Perth Amboy, and properly repair the joints in this locality. 8. Replace the switch tongue at the point where the double track converges into single track on Davidson street, near Smith street, Perth Amboy. 9. Replace the broken switch mate on Smith street, at the corner of Davidson street, Perth Amboy.

"The work included under items 1 to 7, inclusive, shall be completed not later than September 16th, 1919. The work included under items 6 and 9 shall be completed not later than November 9th, 1919."

In April, 1920, the prosecutor filed a petition for an increase in fare from seven cents per fare zone to ten cents per fare zone, for the approval of the board, the increased fare to become effective on April 15th, 1920. The board suspended the proposed increase pending investigation, and set the matter down for hearing on April 29th, 1920, at which hearing it was conceded by the prosecutor that the requirements of the board's order of July 10th, 1919, had not been complied with, and that much of the work required to be done by the order referred to was necessary to insure safe and adequate service, whereupon the board made the following order, which is the subject-matter of review here:

"The deplorable condition of the company's roadbed and equipment as thus disclosed is evident. That the consequent unsafe, insufficient and inadequate service affects the patronage is a fair conclusion. It is probable that if the requirements of the board's orders were complied with the improved service that would ensue would probably result in increasing the patronage and use of the lines to an extent that sufficient revenues would result from the present fares charged.

"It is generally held by commissions that the rate for utility service must be fair alike to the utility and to the public; and above all the rate shall not exceed the value of the service rendered, regardless of losses which are suffered by a utility which may have been inadvisably, imprudently or improvidently built.

"In addition to the board's endeavor to help the petitioner in all reasonable manner, the United States Housing Corporation advanced to it more than $46,000 during the year 1919 to finance the necessary maintenance of the company, and we feel that the public bodies have done their full share in trying to relieve the financial embarrassment of the company. Until the petitioner places its property in safe operating condition, and carries out the requirements of the order of the board

bearing date July 10th, 1919, no further increase in the rates of fare will be considered.

"The application of the company will be denied and the board finds and determines that the proposed charge of ten cents per zone, where seven cents is now charged, is unjust and unreasonable for the service furnished."

The assertion in the brief of counsel of the prosecutor "that the board failed to find the increase either just and reasonable or unjust or unreasonable," has no foundation in fact.

Because the board stated, in making the finding, that the evidence showed unsafe, insufficient and inadequate service, and that such conditions were to be considered along with the other evidence in determining whether or not the proposed charge of ten cents per zone was unjust and unreasonable, counsel for the prosecutor contends that such inadequate and defective service cannot properly be taken into consideration of the board in determining whether the fare proposed to be charged is unjust and unreasonable; and that, therefore, the order of the board was beyond its power to make. And the further contention is that because the board in this order declared that: "Until the petitioner places its property in safe operating condition and carries out the requirements of the order of the board bearing date July 10th, 1919, no further increase in the rates of fare will be considered," the board exceeded the power conferred upon it by statute. But how that declaration can in anywise affect the validity of the finding of the board upon the matter which was before it for decision. namely, whether the fare proposed to be charged was unjust and unreasonable. has not been made clear to me. Even though it be conceded (which is not the case) that the board was without power to create any such condition as complained of, it is clear to me that not until a petition is filed and the board declines to grant a hearing for that reason does the matter come properly up for review, whether by *certiorari* or *mandamus,* is not necessary now to determine. Nor do I think the validity of the order made by the board on July 10th, 1919, can be properly reviewed by me in this proceeding, since the writ in this case is directed to the order made on

June 29th, 1920, and it is the validity of that order solely that can be considered here.

Besides, it appears that the validity of the order of July, 1919, never was challenged, and, according to the testimony, was acquiesced in by the prosecutor, who entered into a partial performance of the same. At any rate its validity cannot be drawn into question at this late day, either directly or collaterally. The prosecutor, however, is not thereby deprived of raising the point presented by the order of July, 1919, because that order, according to the contention of the respondent, was based upon the statute creating the board and upon which statute the present order of like import was based, and the contention for the prosecutor is, "that the board has no power under the act creating the board to refuse to approve a reasonable rate of fare, for the reason that the service furnished was inadequate."

The fundamental question upon which the case turns is whether the board may, in determining what is a just and reasonable rate of fare, take into consideration, the safety, sufficiency and adequacy of service. The contention on behalf of the prosecutor is that the board cannot. The plain reading of the statute, and a consideration of universally recognized business principles, adopted by the commercial world and which are basic of our state policy, lead me to the view that in determining whether a rate of fare proposed by a public utility is unjust and unreasonable, the board may properly take into consideration the safety, sufficiency and adequacy of the service rendered.

Section 15 of the Public Utilities act (*Pamph. L.* 1911, *p.* 376) provides: "The board shall have general supervision and regulation of, jurisdiction and control over, all public utilities, and also over their property, property rights, equipment, facilities and franchises so far as may be necessary for the purpose of carrying out the provisions of this act."

By section 16, subdivision *C*, it is provided: "After hearing, by order in writing, to fix just and reasonable individual rates, joint rates, tolls, charges or schedules thereof, as well as commutation, mileage and other special rates which shall be

imposed, observed and followed thereafter by any public utility as herein defined, whenever the board shall determine any existing individual rate, joint rate, toll, charge or schedule thereof or commutation, mileage or other special rate to be unjustly, unreasonable, insufficient or unjustly discriminatory or preferential."

"(*E*). After hearing, by order in writing, to fix just and reasonable standards, classifications, regulations, practices, measurements of service to be furnished, imposed, observed and followed thereafter by any public utility as herein defined."

Section 17 declares: "The board shall have power, after hearing, upon notice, by order in writing, to require every public utility as herein defined:

"(*b*). To furnish safe, adequate and proper service and to keep and maintain its property and equipment in such condition as to enable it to do so.

"(*h*). When any public utility as herein defined shall increase any existing individual rates, joint rates, tolls, charges or schedules thereof, as well as commutations, mileage and other special rates, or change or alter any existing classification, the board shall have power, either upon written complaint or upon its own initiative, to hear and determine whether the said increase, change or alteration is just and reasonable. The burden of proof to show that the said increase, change or alteration is just and reasonable shall be upon the public utility making the same. The board shall have power pending such hearing and determination to order the suspension of the said increase, change or alteration until the said board shall have approved said increase, change or alteration, not exceeding three months. It shall be the duty of the board to approve any such increase, change or alteration upon being satisfied that the same is just and reasonable."

By section 18 of the act it is provided: "No public utility as herein defined shall:

"(*C*). Adopt, maintain or enforce any regulation, practice or measurement which shall be unjust, unreasonable, unduly preferential, arbitrarily or unjustly discriminatory or other-

98 NEW JERSEY SUPREME COURT.

N. J. Central Trac. Co. v. Public Utility Bd.    *96 N. J. L.*

wise in violation of law; nor shall any public utility as herein defined provide or maintain any service that is unsafe, improper or inadequate, or withhold or refuse any service which can reasonably be demanded and furnished when ordered by said board."

If the question were here involved and it became necessary for me to decide whether the condition imposed by the board in the order of July 10th, to the effect that it would not consider any further application of the prosecutor for an increase in the rate of fare unless it complied with the order referred to—that is, to furnish safe, sufficient and adequate service, I would be inclined to answer that query in the affirmative and for the following reasons:

Where the state by virtue of its police power erects a statutory tribunal and clothes it with the exercise of both judicial and administrative functions, as is the case here, the power necessarily incidental to the proper exercise of the statutory authority conferred will be inferred to exist.

If the board had, by statute, authority given to it to direct the prosecutor to make its road safe and to furnish sufficient and adequate service (the reading of the statute makes it plain that the board is invested with such authority), then it follows as a logical sequence that when the board finds that its order has not been complied with, it must have the implied power to deny a hearing until its order has been obeyed.

For, if this were not so, and safety, adequacy and sufficiency of the service furnished are factors entering into the determination of the question whether the rate of fare applied for is just and reasonable, the fact that the utility has done nothing or very little to remedy the matters complained of and pointed out by the board, would have the effect of rendering the procedure futile, for it must obviously result in no different finding by the board as was found by it at its former hearing. It cannot be that the prosecutor may renew its application without limit on the same facts and circumstances as were found to exist by the board, when it made the condition in the order of July 10th.

The insistence of counsel of the prosecutor is, that under the evidence the board acted arbitrarily in finding and determining that the proposed fare of ten cents per zone, where seven cents are now charged, to be unjust and unreasonable.

A careful perusal of the evidence does not support his claim. There was testimony that tended to establish that in some places the road was in an unsafe condition and imperiled human life and limb, and in other places the track was so constructed that it made riding over it for a considerable distance physically uncomfortable; that the cars were not run according to schedule; that the utility has insufficient equipment to properly operate its cars, &c.

It is unnecessary to resort to argument to demonstrate that such glaring defects in the operation of the road must have the effect to diminish the revenue which the company might otherwise have been in receipt of if the road, its equipment and operation were up to the standard. That the railway and its operation are not what it should be is practically conceded by the prosecutor. Its excuse for the situation is that it has no funds to better the condition. But that is no good reason why the railway should be equipped and operated at the expense of the public.

The burden of the prosecutor's complaint is that the board considered the character of the service rendered to the public in determining that the proposed increase of fare from a seven cents per zone to ten cents was unjust and unreasonable, and that in so doing it violated paragraph 16 of article 1 of the constitution of the State of New Jersey, in that it takes the property of the prosecutor for public use and without just compensation, and in violation of section 1 of the fourteenth amendment of the constitution of the United States, for the same reason, and without due process of law.

I do not find anything in the cases cited in the brief of counsel for the prosecutor that supports any such theory. The fallacy of the theory is obvious. The character of the service rendered by the utility to the public is of the highest importance and materially affects the revenue produced by public patronage. If the service is bad there will be a falling off of

passengers; if the service is very bad only those who are absolutely compelled to use the public utility will do so.

Such a situation necessarily requires that it be considered along with the various other matters in forming a basis on which to determine whether it is just and reasonable to permit an increase of fare where it appears that the insufficiency of the present rate of fare to meet the expenses of operating the utility is due in a measure to its failure to provide and maintain safe, sufficient and adequate service. It was open for the board to find that if the utility was properly equipped and operated up to the standard of good service, it would have a sufficient producing revenue to pay for the operating expenses and a fair return on the investment.

The burden of proof to show that the said increase, change or alteration is just and reasonable is placed by the statute upon the utility making the application.

The board found, and I think properly so, that the prosecutor had not sustained that burden, and that the proposed increase in the fare was unjust and unreasonable.

The writ is dismissed and the order of the board is affirmed.