68 N.J. 543 (1975)
350 A.2d 1
HUTTON PARK GARDENS, A PARTNERSHIP, PLAINTIFF-RESPONDENT, AND HUTTON LAFAYETTE APARTMENTS COMPANY AND ROCKLEDGE REALTY COMPANY, PLAINTIFFS-INTERVENORS,
v.
TOWN COUNCIL OF THE TOWN OF WEST ORANGE AND THE TOWN OF WEST ORANGE, A MUNICIPAL CORPORATION, DEFENDANTS-APPELLANTS. HARVEY J. COSDEN AND JACOB SCHNEIDER, SOLE TRUSTEES, TRADING AS WAYNE TERRACE APARTMENTS; WILSON R. KAPLAN, TRADING AS WAYNE VILLAGE; ESQUIRE ESTATES, INC., A NEW JERSEY CORPORATION; POVERSHON CONSTRUCTION COMPANY, A NEW JERSEY CORPORATION, AND SOUTHFIELD HOMES, INC., A NEW JERSEY CORPORATION, ALL TRADING AS MANCHESTER VILLAGE, PLAINTIFFS-APPELLANTS,
v.
TOWNSHIP OF WAYNE, A MUNICIPAL CORPORATION AND MUNICIPAL COUNCIL OF THE TOWNSHIP OF WAYNE, DEFENDANTS-RESPONDENTS.
The Supreme Court of New Jersey.
Argued May 27, 1975.
Decided December 11, 1975.
*551 Mr. James A. Ospenson argued the cause on behalf of defendants-appellants Town Council of the Town of West Orange and The Town of West Orange.
Mr. Sheppard A. Guryan argued the cause on behalf of plaintiffs-respondents, Hutton Park Gardens, and on behalf of plaintiffs-appellants, Harvey J. Cosden, et al., (Messrs. Lasser, Lasser, Sarokin & Hochman, attorneys).
Mr. Paul A. Rowe argued the cause on behalf of plaintiffs-intervenors, (Mr. Charles Applebaum, on the brief; Messrs. Greenbaum, Greenbaum, Rowe & Smith, attorneys).
Mr. Robert S. Moraff argued the cause on behalf of defendants-respondents Township of Wayne and Municipal Council of the Township of Wayne.
Mr. Murray J. Laulicht argued the cause for amicus curiae Apartment Management Company in A-171 only, (Messrs. Laulicht and Gregory B. Reilly on the brief; Messrs. Lowenstein, Sandler, Brochin, Kohl & Fisher, attorneys).
Mr. Richard F. Aronsohn argued the cause for amicus curiae New Jersey Builders Association and Apartment House Council of New Jersey Builders Association, (Messrs. Aronsohn and Robert J. Schmitt, Jr. on the brief; Messrs. Aronsohn, Kahn & Springstead, attorneys).
Mr. Kenneth E. Meiser, Assistant Deputy Public Advocate argued the cause for amicus curiae New Jersey Public Advocate, *552 (Messrs. Meiser and Howard H. Sims on the brief, Mr. Stanley C. Van Ness, Public Advocate, Division of Public Interest Advocacy, attorney).
Mr. Laurence B. Orloff submitted a brief on behalf of amicus curiae Leone Management Corporation, et al., (Messrs. Hannoch, Weisman, Stern & Besser, attorneys).
The opinion of the Court was delivered by PASHMAN, J.
Having held that regulation of rents is within the powers delegated by the Legislature to municipalities under N.J.S.A. 40:48-2, Inganamort v. Fort Lee, 62 N.J. 521 (1973), this Court is now presented with various questions concerning when and how municipalities may exercise that power.
West Orange adopted a rent control ordinance, No. 247-72, in October 1973. It has since amended the ordinance twice (Ordinances Nos. 276-73, 287-73), each time imposing additional restrictions on the freedom of landlords within the municipality to raise rents. In its present form, the ordinance recites the existence of a limited supply of rental housing in the municipality and receipt of complaints concerning rising rents and deteriorating conditions of rental units. It establishes rent charges as of February 1, 1973 as the base rent and provides that rent increases at the expiration of a lease or a tenancy are limited to the annual percentage increase in the Consumer Price Index (CPI) for the New York metropolitan area computed by the United States Department of Labor for the period from 90 days prior to the commencement of the lease to 90 days prior to its termination.[1] Tenants may additionally be surcharged for the portion of any tax increase equal to the percentage of the square footage of the building which they occupy. The ordinance, however, places a ceiling on such *553 rent increases and surcharges equal to 5% of the existing rent. It also permits a landlord to apply to the municipal rent leveling board for a rent surcharge up to 10% of the existing rent where he has made major capital improvements or increases in services or for a hardship rent increase of up to 10% if he cannot meet his mortgage obligations or maintenance costs. It places a ceiling on the aggregate of all such additional increases and surcharges equal to 10% of the existing rent.
Plaintiff-respondent Hutton Park Gardens filed a complaint in lieu of prerogative writ in the Superior Court in Essex County in which intervenors Hutton Lafayette Apartments Company and Rockledge Realty Company joined challenging the West Orange ordinance and particularly the 5% ceiling on annual rent increases imposed by the most recent amendment[2] as confiscatory, arbitrary and unreasonable. The case was heard on cross-motions for summary judgment on the issue of whether the ordinance was facially unconstitutional.
The principal evidence at this hearing was the affidavit of Richard Segal, manager of apartments owned by plaintiff-intervenors Hutton Lafayette Apartments Company and Rockledge Realty Company. He estimated that operating costs of apartments owned by Hutton Lafayette would increase by 15% of the average existing rent during 1974 and of apartments owned by Rockledge Realty by 5-7% during the same period.
The trial court held the ordinance facially unconstitutional, granted summary judgment for parties plaintiff, and enjoined enforcement of the ordinance.
*554 The history of rent control in Wayne Township is similar to that in West Orange. Wayne Township adopted a rent control ordinance, No. 22-1972, in May 1972. The ordinance has since been amended three times (Ordinances Nos. 129-1972, 106-1973, 51-1974). In its present form, the ordinance declares the existence of a housing crisis in Wayne Township. It establishes the rents as of May 1972 as base rents and limits rent increases over those rents to 50% of the percentage increase in the Consumer Price Index during the period from 120 days before the prior lease was entered into to 120 days before it expires. It permits landlords to apply to the municipal rent leveling commission for rent increases to alleviate hardships such as inability to meet mortgage payments or maintenance costs, or to reimburse them for major capital improvements. These increases are limited to 15% of the tenant's existing rent charge. It also permits him to apply for permission to impose an additional surcharge to pass through to the tenant a portion of increases in local taxes equal to the percentage of rooms in the building occupied by the tenant.
Plaintiffs, various apartment owners in Wayne Township, filed a complaint in lieu of prerogative writ in the Superior Court in Passaic County challenging the restriction of annual rent increases to 50% of the increase in the CPI[3] as *555 confiscatory, arbitrary and unreasonable. The trial court heard the issue of the facial constitutionality on cross motions for summary judgment and entered judgment for the municipality. The Appellate Division affirmed in an unreported opinion.
We granted certification[4] in both of these cases, as well as in Brunetti v. New Milford, 68 N.J. 576 (1975) and Troy Hills Village v. Parsippany-Troy Hills Tp. Council, 68 N.J. 604 (1975), also decided today, to consider the limitations imposed by the federal and state constitutions upon municipal efforts to regulate rents. These questions have been the subject of much litigation since this Court's decision in Inganamort v. Fort Lee, supra.[5]

I
We first consider plaintiffs' contentions that the ordinances are generally arbitrary and unreasonable, that is, that they violate principles of substantive due process.
Municipal rent control is, of course, but one example of the larger and more pervasive phenomenon of governmental regulation of prices under the police power. For constitutional *556 purposes, rent control is indistinguishable from other types of governmental price regulation. Despite the permanence and concreteness of real property, and the special place accorded it by the common law as expounded by the early commentators, its commercial use is no less subject to regulation under the police power than other, more ephemeral, goods and services. Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865 (1921).[6] The renting of residential property is as much an essential enterprise as the retail sale of food-stuffs, the extraction and processing of natural resources, the operation of a railroad, or the conduct of a banking business, cf. Javins v. First Nat'l Realty Corp., 138 U.S. App. D.C. 369, 428 F.2d 1071, 1079 (D.C. Cir.1971), and equally subject to public regulation when the need arises. Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944); Block v. Hirsh, supra; Jamouneau v. Harner, 16 N.J. 500 (1954), cert. denied 349 U.S. 904, 75 S.Ct. 580, 99 L.Ed. 1241 (1955). To ascertain the limitations imposed by the state and federal constitutions upon municipal efforts to regulate rents, it is therefore appropriate to consider the constitutional limits on governmental regulation of prices generally.
Governmental regulation of prices has a long, although somewhat checkered, legal history in this country.[7] For *557 present purposes, however, we need look no farther back than the decision of United States Supreme Court in Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934), a case concerning regulation of milk prices. In that case, breaking free of the tangled and restrictive body of decisional law concerning price regulation which it had developed over the preceding half-century, the Court held that state regulation of prices enacted to promote the general welfare is not per se violative of the due process clause in the federal constitution:
We may as well say at once that the dairy industry is not, in the accepted sense of the phrase, a public utility. We think the appellant is also right in asserting that there is in this case no suggestion of any monopoly or monopolistic practice. It goes without saying that those engaged in the business are in no way dependent upon public grants or franchises for the privilege of conducting their activities. But if, as must be conceded, the industry is subject to regulation in the public interest, what constitutional principle bars the state from correcting existing maladjustments by legislation touching prices? We think there is no such principle. The due process clause makes no mention of sales or of prices any more than it speaks of business or contracts or buildings or other incidents of property. The thought seems nevertheless to have persisted that there is something peculiarly sacrosanct about the price one may *558 charge for what he makes or sells, and that, however able to regulate other elements of manufacture or trade, with incidental effect upon price, the state is incapable of directly controlling the price itself. This view was negatived many years ago. Munn v. Illinois, 94 U.S. 113, 24 L.Ed. 77. [291 U.S. at 531-32, 54 S.Ct. at 513, 78 L.Ed. at 954].
Rather, it held that where, in the opinion of the legislature, regulation of prices serves the public interest, a state is entirely free to impose such regulation, provided only that it does not employ means which are arbitrary, discriminatory or demonstrably irrelevant to a legitimate purpose:
If the lawmaking body within its sphere of government concludes that the conditions or practices in an industry make unrestricted competition an inadequate safeguard of the consumer's interests, produce waste harmful to the public, threaten ultimately to cut off the supply of a commodity needed by the public, or portend the destruction of the industry itself, appropriate statutes passed in an honest effort to correct the threatened consequences may not be set aside because the regulation adopted fixes prices reasonably deemed by the legislature to be fair to those engaged in the industry and to the consuming public. [Id. at 538-39, 54 S.Ct. at 516, 78 L.Ed. at 957; footnote omitted].
In so deciding, the Court reverted to its earliest view of the limitations imposed upon such state action by the fourteenth amendment. Munn v. Illinois, 94 U.S. 113, 24 L.Ed. 77 (1877); Peik v. Chicago & N.W.R. Co., 94 U.S. 164, 24 L.Ed. 97 (1877). In subsequent decisions, the United States Supreme Court has consistently reaffirmed its holding in Nebbia. E.g., Cities Service Gas Co. v. Peerless Oil & Gas Co., 340 U.S. 179, 71 S.Ct. 215, 95 L.Ed. 190 (1950) (wellhead price of natural gas); Olsen v. Nebraska ex rel. Western Reference & Bond Ass'n, 313 U.S. 236, 61 S.Ct. 862, 85 L.Ed. 1305 (1941) (fees of employment agencies); Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 60 S.Ct. 517, 84 L.Ed. 774 (1940) (prices of citrus fruits); Townsend v. Yeomans, 301 U.S. 441, 57 S.Ct. 842, 81 L.Ed. 1210 (1937) (fees of tobacco factors); Hegeman Farms Corp. v. Baldwin, 293 U.S. 163, 55 S.Ct. 7, 79 L.Ed. 259 (1934) (price of milk).
*559 Among other things, Nebbia and the line of decisions following it reject the view previously expressed by the Supreme Court in cases such as Ribnik v. McBride, 277 U.S. 350, 48 S.Ct. 545, 72 L.Ed. 913 (1928) and Tyson & Bros.-United Theatre Ticket Offices v. Banton, 273 U.S. 418, 47 S.Ct. 426, 71 L.Ed. 718 (1927) that governmental price regulation violates principles of substantive due process unless supported by a special showing that an "emergency" exists or that the industry to be regulated is "affected with a public interest." The issue was presented most starkly in Olsen v. Nebraska ex rel. Western Reference & Bonding Ass'n, supra, a case challenging the constitutionality of regulation of fees charged by employment agencies. In its decision, the Court summarily rejected the contention that "special circumstances must be shown to support the validity of such drastic legislation as price fixing," 313 U.S. at 246, 61 S.Ct. at 865, 85 L.Ed. at 1309, and responded to the claim that the operation of employment agencies was not "affected with a public interest" with the declaration:
These cases [Nebbia and its progeny] represent more than scattered examples of constitutionally permissible price-fixing schemes. They represent in large measure a basic departure from the philosophy and approach of the majority in the Ribnik Case. The standard there employed, following that used in Tyson & Bro.  United Theatre Ticket Offices v. Banton, 273 U.S. 418, 430 et seq., 71 L.Ed. 718, 722, 47 S.Ct. 426, 58 A.L.R. 1236, was that the constitutional validity of price-fixing legislation, at least in absence of a so-called emergency, was dependent on whether or not the business in question was "affected with a public interest." Cf. Brazee v. Michigan, 241 U.S. 340, 60 L.Ed. 1034, 36 S.Ct. 561, Ann. Cas. 1917C 522. It was said to be so affected if it had been "devoted to the public use" and if "an interest in effect" had been granted "to the public in that use." Ribnik v. McBride, supra (277 U.S. p. 355, 72 L.Ed. 915, 48 S.Ct. 545, 56 A.L.R. 1327). That test, labelled by Mr. Justice Holmes in his dissent in the Tyson Case (273 U.S. at p. 446, 71 L.Ed. 729, 47 S.Ct. 426, 58 A.L.R. 1236) as "little more than a fiction," was discarded in Nebbia v. New York, supra (291 U.S. pp. 531-539, 78 L.Ed. 953-958, 54 S.Ct. 505, 89 A.L.R. 1469). It was there stated that such criteria "are not susceptible of definition and form an unsatisfactory test of the constitutionality of legislation directed at business practices or *560 prices," and that the phrase "affected with a public interest" can mean "no more than that an industry, for adequate reason, is subject to control for the public good." Id., 291 U.S. p. 536, 78 L.Ed. 956, 54 S.Ct. 505, 89 A.L.R. 1469. [Id. at 245-46, 61 S.Ct. at 865, 85 L.Ed. at 1309, footnote omitted].
Clearly, proof of "special circumstances" or "emergent conditions" was long ago rejected as the only standard for determining whether legislative enactments violate substantive due process.
Principles of substantive due process are found in Article I, § I of the New Jersey Constitution of 1947, as well as in the federal constitution, Reingold v. Harper, 6 N.J. 182, 190 (1951); Washington Nat'l Ins. Co. v. Bd. of Review, 1 N.J. 545, 554 (1949). In construing that article, we are not obliged to rigidly follow the Supreme Court in its construction of the fourteenth amendment to the federal constitution. Southern Burlington Cty. NAACP v. Mt. Laurel Tp., 67 N.J. 151 (1975), cert. den. ___ U.S. ___, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975); King v. South Jersey National Bank, 66 N.J. 161 (1974); Robinson v. Cahill, 62 N.J. 473, 490-92 (1973), cert. den. 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219 (1973). In this particular area, however, we have explicitly chosen to do so. In State Bd. of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504, 516-19 (E. & A. 1935), the former Court of Errors and Appeals upheld State regulation of milk prices and embraced the principles enunciated in Nebbia as being sound construction not only of the federal constitution but also of the parallel provisions of the State constitution:
It is suggested that this construction of the fourteenth amendment "does not bind this court as to meaning and effect of the due process clauses of our own constitution." Even so, they are employed in the same sense in our constitution; and we entertain the view that the foregoing is a sound interpretation of the like constitutional provision. The legislature is supreme in its proper sphere: the exercise of power by it is subject only to the restraints imposed by the federal and state constitutions, and those which are fundamental in the social compact. A legislative enactment should not be set aside unless its unconstitutionality indisputably appears. If *561 there be a permissible doubt as to the existence of the constitutional limitation invoked against the validiy of an act, the courts will not declare the act to be contrary to the constitution. Attorney-General v. McGuinness, 78 N.J. Law 346. The court cannot substitute its conception of sound public policy for that entertained by the legislature, if there be no disregard of a constitutional mandate. [118 N.J. Eq at 518-19]
We have since had occasion to apply these principles to sustain regulation of the prices of cigarettes, Lane Distributors, Inc. v. Tilton, 7 N.J. 349, 364-68 (1951), and gasoline, Fried v. Kervick, 34 N.J. 68, 71 (1961). See also Gaine v. Burnett, 122 N.J.L. 39 (Sup. Ct. 1939) aff'd o.b. 123 N.J.L. 317 (E. & A. 1939) (upholding regulation of liquor prices).
N.J. Const. (1947), Art. 1, § 1, like the federal due process clause, makes the constitutionality of governmental price regulation dependent on neither the existence of an "emergency,"[8]Como Farms, Inc. v. Foran, 6 N.J. *562 Super. 306, 314 (App. Div. 1950); cf. Garden State Farms, Inc. v. Mathis, 61 N.J. 406, 424 (1972), nor any determination that the industry regulated is "affected by a public interest" in some special manner. Fried v. Kervick, supra, 34 N.J. at 71-74; Lane Distributors, Inc. v. Tilton, supra, 7 N.J. at 365-66; State Bd. of Milk Control v. Newark Milk Co., supra, 118 N.J. Eq. at 517-18. Either of those factors may, however, reinforce the reasonableness of a particular regulation under challenge.
The decisions both of this Court and of the United States Supreme Court concerning price regulation are the natural consequence of the limited role of the judiciary in applying the principles of substantive due process to economic and social legislation. The proper function of the courts in this area was stated by the United States Supreme Court in Nebbia v. New York:
So far as the requirement of due process is concerned, and in the absence of other constitutional restriction, a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose. The courts are without authority either to declare such policy, or, when it is declared by the legislature, to override it. If the laws passed are seen to have a reasonable relation to a proper *563 legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied, and judicial determination to that effect renders the court functus officio. "Whether the free operation of the normal laws of competition is a wise and wholesome rule for trade and commerce is an economic question which this court need not consider or determine." Northern Securities Co. v. United States, 193 U.S. 197, 337, 338, 24 S.Ct. 436, 457, 48 L.Ed. 679, 700, 701. And it is equally clear that if the legislative policy be to curb unrestrained and harmful competition by measures which are not arbitrary or discriminatory it does not lie with the courts to determine that the rule is unwise. With the wisdom of the policy adopted, with the adequacy or practicability of the law enacted to forward it, the courts are both incompetent and unauthorized to deal. [291 U.S. at 537, 54 S.Ct. at 516, 78 L.Ed. at 957]
This position has consistently been reaffirmed by that Court, most recently in North Dakota State Bd. of Pharmacy v. Snyder's Drug Stores, 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973) and Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).
To similar effect, we observed in Lane Distributors, Inc. v. Tilton, supra:
Whether free and unlimited competition in an industry shall prevail is an economic question and the policy with reference thereto is primarily for the legislature to determine. Courts are not concerned with the wisdom of such legislation; their function is to determine whether or not the statute is one having a lawful purpose for its object. The expediency of the statute is for the lawmaking body alone. [7 N.J. at 365].
Accord Burton v. Sills, 53 N.J. 86, 95 (1968), appeal dismissed 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed.2d 748 (1969); Hudson County News Co. v. Sills, 41 N.J. 220 (1963), appeal dismissed 378 U.S. 583, 84 S.Ct. 1914, 12 L.Ed.2d 1036 (1964); cf. King v. South Jersey Nat'l Bank, 66 N.J. 161, 189 (1974); N.J. Chapter, American Institute of Planners v. N.J. State Bd. of Professional Planners, 48 N.J. 581, 609 (1967), appeal dismissed 389 U.S. 8, 88 S.Ct. 70, 19 L.Ed. 2d 8 (1967).
It follows from the foregoing that legislative enactments regulating prices, including municipal rent control ordinances, are subject to the same narrow scope of review *564 under principles of substantive due process as are other enactments under the police power: could the legislative body rationally have concluded that the enactment would serve the public interest without arbitrariness or discrimination? Hudson County News Co. v. Sills, supra, 41 N.J. at 227-230; Reingold v. Harper, supra, 6 N.J. at 195-96; North Dakota Pharmacy Bd. v. Snyder's Drug Store, supra; Ferguson v. Skrupa, supra.
In the context of price regulation the question is whether the legislative body could rationally have concluded that the unrestrained operation of the competitive market was not in the public interest. In the area of rent control this conclusion has in the past usually been drawn from the existence of a serious housing shortage, see, e.g., Block v. Hirsh, supra; Helmsley v. Fort Lee, supra 362 F. Supp. at 594; Stoneridge Apts. Co. v. Lindsay, 303 F. Supp. 677, 680 (S.D.N.Y. 1969); Jamouneau v. Harner, supra; but one can conceive of other circumstances which might rationally persuade a legislative body that the free housing market was not functioning in the public interest. See, e.g., Block v. Hirsh, supra, 256 U.S. at 156, 41 S.Ct. at 459, 65 L.Ed. at 871 (monopoly power), N.J.S.A. 2A:42-74 et seq. (prevalence of substandard housing); Marshal House, Inc. v. Rent Control Bd. of Brookline, 358 Mass. 686, 266 N.E.2d 876, 883 (Sup. Jud. Ct. 1971) (deterioration of existing housing stock).
Municipalities have the power and authority to enact ordinances in support of the police power. Municipal ordinances, like statutes, carry a presumption of validity. Moyant v. Paramus, 30 N.J. 528, 534-35 (1959); Guill v. Mayor & Council of Hoboken, 21 N.J. 574, 581 (1956). The presumption is not an irrebuttable one, Collingswood v. Ringgold, 66 N.J. 350 (1975); Moyant v. Paramus, supra, but it places a heavy burden on the party seeking to overturn the ordinance. Legislative bodies are presumed to act on the basis of adequate factual support and, absent a sufficient showing to the contrary, it will be assumed that their *565 enactments rest upon some rational basis within their knowledge and experience. Burton v. Sills, supra, 53 N.J. at 95; Hudson County News Co. v. Sills, supra, 41 N.J. at 228; Reingold v. Harper, supra, 6 N.J. at 195-96. This presumption can be overcome only by proofs that preclude the possibility that there could have been any set of facts known to the legislative body or which could reasonably be assumed to have been known which would rationally support a conclusion that the enactment is in the public interest. Reingold v. Harper, supra, 6 N.J. at 196; cf. Jamouneau v. Harner, supra, 16 N.J. at 515. The judiciary will not evaluate the weight of the evidence for and against the enactment nor review the wisdom of any determination of policy which the legislative body might have made.
Plaintiffs, in attacking the ordinances generally as violative of principles of substantive due process, have produced no evidence to meet their burden of proof and to overcome the ordinance's presumption of validity, and the Court knows of no facts of which it may take judicial notice that would support such a result.

II
The more substantial claim made by plaintiffs is that the West Orange and Wayne Township ordinances are confiscatory. Although the law once was that the courts may not review legislative determinations as to prices to be charged by businesses affected with a public interest, see Munn v. Illinois, supra; see generally, FPC v. Natural Gas Pipeline Co., 315 U.S. 575, 599, 62 S.Ct. 736, 749, 86 L.Ed. 1037, 1056 (1942) (Black, Douglas and Murphy, JJ. concurring); Wilson v. Brown, 137 F.2d 348, 351 (Emer. Ct. App. 1943), it is now well-established that the constitution requires that price regulation be non-confiscatory in effect and that the courts will enforce that requirement. FPC v. Texaco, Inc., 417 U.S. 380, 391-92, 94 S.Ct. 2315, 2323-24, 41 L.Ed.2d 141, 152-53 (1974); Permian Basin Area Rate Cases, 390 U.S. 747, 769-70, 88 S.Ct. 1344, 1361-62, 20 *566 L.Ed.2d 312, 337-338 (1968); FPC v. Natural Gas Pipeline Co., supra, 315 U.S. at 585-86, 62 S.Ct. at 742-43, 86 L.Ed. at 1049-50; Denver Union Stock Yard Co. v. United States, 304 U.S. 470, 475, 58 S.Ct. 990, 994, 82 L.Ed. 1469, 1475 (1938).
The term "confiscatory" must be understood in light of the surrounding circumstances. There are undoubtedly times of great public exigency during which landlords may temporarily be required to rent their property at rates which do not permit them to obtain what would ordinarily be considered a fair return. Bowles v. Willingham, supra, 321 U.S. at 519, 64 S.Ct. at 649, 88 L.Ed. at 905; Wilson v. Brown, supra, 137 F.2d at 351-52; Teeval, Co. v. Stern, 301 N.Y. 346, 362, 93 N.E.2d 884, 890 (Ct. App. 1950). See also Western States Meat Packers Ass'n v. Dunlop, 482 F.2d 1401, 1403-4 (Temp. Emer. Ct. App. 1973); Int'l Brotherhood of Electrical Workers, Local No. 11 v. Boldt, 481 F.2d 1392, 1395 (Temp. Emer. Ct. App. 1973), cert. denied 414 U.S. 1092, 94 S.Ct. 723, 38 L.Ed.2d 549 (1973). Emergency conditions do not create new powers nor do they permit the government to transgress specific constitutional prohibitions, but they may present occasions for the appropriate exercise of powers which would otherwise remain dormant, and they justify flexible applications of constitutional restrictions in order to facilitate rather than obstruct governmental steps necessary to cope with the emergency. Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 426, 54 S.Ct. 231, 235, 78 L.Ed. 413, 422 (1934); Jamouneau v. Harner, supra, 16 N.J. at 514. As Justice Holmes observed in an early decision upholding a rent control provision:
The regulation is put and justified only as a temporary measure. * * * A limit in time, to tide over a passing trouble, well may justify a law that could not be upheld as a permanent change. [Block v. Hirsh, 256 U.S. at 157, 41 S.Ct. at 460, 65 L.Ed. at 871; citations omitted]
By emergency more is meant than merely a general public need. The existence of a chronic housing shortage *567 of indefinite duration would not justify depriving property owners of a fair return for an indefinite period. But see Amsterdam-Manhattan, Inc. v. City Rent and Rehabilitation Administration, 43 Misc.2d 889, 252 N.Y.S.2d 758 (Sup. Ct. 1964) aff'd mem. 21 A.D.2d 965, 252 N.Y.S.2d 395 (App. Div. 1965) aff'd on opinion of the trial court, 15 N.Y.2d 1014, 260 N.Y.S.2d 23, 207 N.E.2d 616 (Ct. App. 1965). To justify such a deprivation, an emergency would have to be a temporary situation of such enormity that all individuals might reasonably be required to make sacrifices for the common weal. Such situations certainly include war, Bowles v. Willingham, supra, 321 U.S. at 519, 64 S.Ct. at 649, 88 L.Ed. at 905 ("A nation which can demand the lives of its men and women in the waging of that war is under no constitutional necessity of providing a system of price control on the domestic front which will assure each landlord a `fair return' on his property"), the periods of economic dislocations which follow major wars, Woods v. Cloyd W. Miller Co., 333 U.S. 138, 68 S.Ct. 421, 92 L.Ed. 596 (1948); Block v. Hirsh, supra and other periods of grave economic disturbance. Home Building & Loan Ass'n v. Blaisdell, supra. Absent such states of emergency, landlords cannot be required to subsidize the housing needs of their tenants.
The determination of the existence of such an emergency is, in the first instance, a legislative function, and, where the legislature has expressly determined that such a situation exists its determination is entitled to a distinct presumption of validity. Block v. Hirsh, supra, 256 U.S. at 154-55, 41 S.Ct. at 459, 65 L.Ed. at 870; Burlington Food Store, Inc. v. Hoffman, 45 N.J. 214, 221 (1965); Jamouneau v. Harner, supra, 16 N.J. at 515; Como Farms, Inc. v. Foran, supra, 6 N.J. Super. at 314. Nevertheless, a formal legislative declaration of emergency is not necessary for a court to find that legislation is in fact sustainable as an emergency measure, Jamouneau v. Harner, supra, 16 N.J. at 516, nor does adoption of such a declaration preclude the *568 courts from determining whether such an emergency exists in fact. Home Building & Loan Ass'n v. Blaisdell, supra, 290 U.S. at 442, 54 S.Ct. at 241, 78 L.Ed. at 431; Chastleton Corp. v. Sinclair, 264 U.S. 543, 547-48, 44 S.Ct. 405, 406, 68 L.Ed. 841, 843-44 (1924); Jamouneau v. Harner, supra, 16 N.J. at 515; Hourigan v. North Bergen Tp., 113 N.J.L. 143 (E. & A. 1934).
Nevertheless, we need not here determine whether present economic conditions constitute an "emergency" warranting a denial to a landlord of a fair return nor explore the difficult question of just how far the State may impose on rights of private property in times of emergency since the record here does not disclose that the ordinances under review impose any such drastic burden on landlords.
In ordinary circumstances, price controls which do not permit an economically efficient operator to obtain a "just and reasonable" return on his investment are deemed confiscatory.[9]FPC v. Texaco, Inc., supra; Permian Basin *569 Area Rate Cases, supra, 390 U.S. at 769-770, 88 S.Ct. at 1361-62, 20 L.Ed.2d at 337-338; FPC v. Natural Gas Pipeline Co., supra, 315 U.S. at 585-86, 62 S.Ct. at 742-43, 86 L.Ed. at 1049-50.
The requirement that rent regulation must permit a just and reasonable return does not place any undue restriction on the mechanism of regulation. The regulatory scheme need not take a particular predetermined form. So long as the means chosen to accomplish the object are not wholly arbitrary and unreasonable, the courts are concerned solely with the question of whether the return actually permitted is just and reasonable. Permian Basin Area Rate Cases, supra, 390 U.S. at 768-70, 88 S.Ct. at 1360-62, 20 L.Ed.2d at 336-38; FPC v. Hope Natural Gas Co., 320 U.S. 591, 602, 64 S.Ct. 281, 287, 88 L.Ed.2d 333, 344 (1944); see FPC v. Texaco, supra, 417 U.S. at 391-92, 94 S.Ct. at 2323-24, 41 L.Ed.2d at 152-53; Wisconsin v. FPC, 373 U.S. 294, 309, 83 S.Ct. 1266, 1274, 10 L.Ed.2d 357, 368 (1963). Thus the municipality is not required to make an individual determination as to the proper rent level for each individual landlord but may adopt regulations governing rent levels of broad classes of property if fair and reasonable in application. Permian Basin Area Rate Cases, supra, 390 U.S. at 769, 88 S.Ct. at 1361, 20 L.Ed.2d at 337; cf. Wisconsin v. FPC, supra; Bowles v. Willingham, supra. Further, if the municipality chooses to regulate by adoption of class regulations, there is no particular formula which it is constitutionally bound to employ. Albigese v. Jersey City, supra.
The term "just and reasonable" is hardly more precise than the term "confiscatory," its antonym. It is no objection that the regulation may incidentally cause the value of the property to be reduced. Permian Basin Area Cases, supra, 390 U.S. at 769, 88 S.Ct. at 1361, 20 L.Ed.2d *570 at 337; FPC v. Hope Natural Gas Co., supra, 320 U.S. at 601, 64 S.Ct. at 287, 88 L.Ed. at 344. The rate of return permitted need not be as high as prevailed in the industry prior to regulation nor as much as an investor might obtain by placing his capital elsewhere. Covington & Lexington Turnpike Rd. Co. v. Sandford, 164 U.S. 578, 596-98, 17 S.Ct. 198, 205-06, 41 L.Ed. 560, 566-67 (1896). On the other hand, the return should be one which is generally commensurate with returns on investments in other enterprises having comparable risks. Determination of what level of return is "just and reasonable" involves evaluation not only of the interests of the investor but also of the interests of the consumer and of the general public sought to be advanced by the regulatory legislation. Permian Basin Area Rate Cases, supra, 390 U.S. at 769-70, 88 S.Ct. at 1361-62, 20 L.Ed.2d at 337-38; FPC v. Hope Natural Gas Co., supra, 320 U.S. at 603, 64 S.Ct. at 288, 88 L.Ed. at 345; Covington & Lexington Turnpike Rd. Co. v. Sandford, supra, 164 U.S. at 596-97, 17 S.Ct. at 205-06, 41 L.Ed. at 566-67; In re Intrastate Industrial Sand Rates, 66 N.J. 12, 22, 24 (1974); Atlantic City Sewerage Co. v. Bd. of Public Utility Comm'rs, 128 N.J.L. 359, 366 (Sup. Ct. 1942) aff'd 129 N.J.L. 401 (E. & A. 1943), see Gentry v. Howard, supra, 365 F. Supp. at 573. Rent levels are thus not objectionable merely because they fix returns at a lower scale for inefficient operators, do not reward persons who have paid excessive or inflated purchase prices for their property, or may otherwise work hardships on landlords in atypical situations. Permian Basin Area Rate Cases, supra, 390 U.S. at 769, 88 S.Ct. at 1361, 20 L.Ed.2d at 337; Hegeman Farms Corp. v. Baldwin, supra; Covington & Lexington Turnpike Rd. Co. v. Sandford, supra; N.J. Central Traction Co. v. Bd. of Public Utility Comm'rs, 96 N.J.L. 90 (Sup. Ct. 1921).
Whether a particular regulation of prices fails to permit a just and reasonable return is a mixed fact-law question. The burden of proof is heavily upon the parties alleging confiscation to demonstrate it. The fact that costs *571 are increasing faster than permissible rents under a particular ordinance, as may be the case in West Orange, or even that some owners are sustaining operating losses will not per se suffice to prove unconstitutional confiscation. Townsend v. Yeomans, supra; Hegeman Farms Corp. v. Baldwin, supra.
Plaintiffs in the present case have not tendered evidence as to their actual profits or losses, the value of their properties, the state of the housing market, or any of the other factors which a court would have to consider to determine whether the ordinances failed to permit a just and reasonable return. See Troy Hills Village v. Parsippany-Troy Hills Tp. Council, supra, 68 N.J. at 621.
Undoubtedly, rent control ordinances can be written which are so restrictive as to facially preclude any possibility of a just and reasonable return. See Mora v. Mejias, 223 F.2d 814 (1 Cir.1955) (prices set so low that all members of industry would have to operate at a loss); Kress, Dunlap & Lane, Ltd. v. Downing, 193 F. Supp. 874 (D.V.I. 1961) (rent control ordinance continued in operation for fourteen years without any provision for rent increases); Miami Beach v. Forte Towers, Inc., 305 So.2d 764, 768-69 (Fla. Sup. Ct. 1974) (Dekle, J. concurring specially). It is only these or comparably drastic ordinances which can be struck down as facially confiscatory. See FPC v. Texaco, Inc., supra, 417 U.S. at 392-93, 94 S.Ct. at 2323-24, 41 L.Ed.2d at 153-54.
The provisions challenged here by plaintiffs do not fall into this category. Both the West Orange and Wayne Township ordinances take the rent level set by the landlord at a recent date as the base rent. They permit the landlord to obtain annual increases over this rent as a matter of course and to obtain special increases to compensate for certain extraordinary expenses at the discretion of the rent leveling board or governing body. Although the total increases permitted under these ordinances are sharply limited, and may be less than price increases prevailing in other sectors of the economy, cf. Equitable Trust Co. v. Bowles, 143 F.2d *572 735 (Emer Ct. App. 1944), we cannot say a priori that the ordinances preclude any possibility of permitting a just and reasonable return to apartment house owners in general. The return which landlords were obtaining at the base rent levels may well have been so far above the just and reasonable mark that the present diminished rate of return may still be more than just and reasonable even if current cost increases are outpacing permissible rent increases. An ordinance is not rendered facially unconstitutional by the fact that it does not expressly include a provision assuring a just and reasonable return in its regulatory mechanism. Albigese v. Jersey City, supra, 127 N.J. Super. at 121-22; see Townsend v. Yeomans, supra. Every rent control ordinance must be deemed to intend, and will be so read, to permit property owners to apply to the local administrative agency for relief on the ground that the regulation entitles the owner to a just and reasonable rate of return.
We further call attention to what we have said in Troy Hills Village v. Parsippany-Troy Hills Tp. Council, supra, 68 N.J. at 621-630 as to the formulation of standards and criteria of fair return in a rent control context.
We therefore conclude that plaintiffs have not borne their burden of proof in demonstrating that the ordinances are confiscatory. In so holding, we note that the Supreme Judicial Court of Massachusetts, faced with a similar challenge to the facial constitutionality of a statute adopted under local option by various municipalities in that state, has reached the same conclusion. Marshal House, Inc. v. Brookline Rent Control Bd., supra, 266 N.E.2d at 889.

III
The final question to be considered is whether, as argued by plaintiffs, the specific formulae adopted by West Orange and Wayne Township to govern permissible rent increases are so arbitrary and unreasonable as to violate principles of substantive due process. Plaintiffs' contention is, in effect, that limiting increases to a fraction of the percentage increase *573 in the CPI or to a fixed percentage of existing rents rather than to actual increases in the costs of operating a residential apartment building is inherently irrational.
The scope of judicial review under principles of substantive due process has been discussed above and need not be repeated. A wide variety of techniques have been employed over the past 35 years in various jurisdictions to regulate rents, some more successfully than others. Undoubtedly, still other techniques could be devised. It is not for the courts to dictate the method of regulation to be employed; subject to constitutional limitation, that is a matter wholly within the discretion of the legislative body. Albigese v. Jersey City, supra. Legislative bodies are not obliged to shape regulations under the police power with mathematical exactitude. They may make approximations and, if need be, informed guesses. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). For constitutional purposes, it suffices that the means adopted be rationally related to the purpose sought to be accomplished.
The ordinances at issue are not models of careful draftsmanship. Their history is one of repeated tinkering and patching as the municipalities have discovered problems not previously dealt with and have sought to cope with changing economic conditions. To some degree this might have been avoided had the State legislature adopted a uniform enabling act. Cf. N.J.S.A. 2A:42-74 et seq.; 2A:42-14 et seq. (expired).
Inganamort v. Fort Lee, supra, was decided after a State rent control bill had passed the Assembly and was withdrawn in the Senate (reportedly it was facing serious opposition). The present challenges to municipal rent control point up the necessity for uniform standards and procedures for deciding rent increases that are fair and equitable to both landlord and tenant. Uncertain rent controls discourage housing construction, capital improvements and property maintenance. Developers and owners seek even-handedness in rent leveling so that there will be a degree of certainty.
*574 Another look is necessary concerning a state rent control bill that addresses the entire procedure of regulating increases. We here expressly call the attention of the Legislature to the high desirability of a carefully drawn local option enabling statute on the subject of rent control. It should specify uniform rules with appropriate delegation of power to municipalities to refine such rules as local conditions might require.
The element of irrationality identified by plaintiffs is that the ordinances do not adequately allow landlords to recover increases in operating costs. Constitutional principles require only that the landlord be permitted to obtain a just and reasonable return; they do not require that landlords uniformly be permitted to pass particular costs through to their tenants. The ordinances themselves do not purport to represent efforts to guarantee landlords more than the constitutional minimum. We have considered and rejected the contention that the ordinances facially deny the opportunity to obtain a just and reasonable return; precisely the same considerations compel the conclusion that the challenged provisions do not violate principles of substantive due process.
Finally, it cannot be said that limiting increases to a fraction of the percentage increase in the CPI or to a fixed percentage of existing rents rather than to the actual increases in operating costs is not rationally related to the purposes of rent control legislation. We note that the rent increase formulae chosen by defendants in the instant case are superimposed upon base rents that the landlord selected. It is conceivable that, when first selected, these base rents yielded an exorbitant or unreasonably high profit return. Permitting a landlord under these circumstances to pass on to his tenants all increases in costs or a percentage increase equal to 100% of the CPI would simply perpetuate the recovery of exorbitant rents. Therefore, at least in some instances, rent increase formulae which limit rent increases to an amount less than the percentage increase in the CPI *575 may be not only rational but may be necessary if rent control is to protect tenants from unjust and exorbitant rents.

IV
The pleadings in both these cases would appear to be broad enough to encompass attacks on the ordinances in question both as facially unconstitutional and unconstitutional as applied. The record presently before this Court does not clearly indicate that plaintiffs have abandoned possible claims as to unconstitutionality of the ordinances as applied. We therefore affirm the judgment of the Appellate Division in Cosden v. Wayne Tp. and reverse the judgment of the Law Division in Hutton Park Gardens v. West Orange Town Council, and remand both cases for further proceedings not inconsistent with this opinion.[10]
CONFORD, P.J.A.D., Temporarily Assigned (concurring).
I join the court's opinion except as to the references to public utility rate cases in connection with the matter of "fair return". See my concurring opinion in Troy Hills Village v. Parsippany-Troy Hills, 68 N.J. 604 (1975).
Justice CLIFFORD joins in this concurring opinion.
CLIFFORD, J., and CONFORD, P.J.A.D., concurring in the result.
For reversal and remandment in Hutton Park Gardens  Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, *576 PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD  7.
For affirmance  None.
For affirmance and remandment in Cosden  Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD  7.
For reversal  None.
NOTES
[1] See generally, U.S. Dept. of Labor, Bureau of Labor Statistics, The Consumer Price Index: A Short Description (1971).
[2] Ordinance No. 287-73, § 8A provides:

Section 8A: No rent increase shall hereafter be allowed which shall exceed 5 per cent of the rent charged. The term "rent increase" shall include Consumer Price Index increase and Tax surcharge for the purposes of this section. Nothing herein contained shall prohibit or limit any increase granted under section 10 hereof under the hardship rent increase section.
[3] Ordinance No. 51-1974, § 4 provides in pertinent part:

SECTION 4. Establishment of rents between a landlord and a tenant to whom this act is applicable shall be determined by the provisions of this act. At the expiration of a lease or at the termination of the lease of a periodic tenant, no landlord may request or receive a percentage increase in rent which is greater than fifty (50%) percent of the difference between the Consumer Price Index 120 days prior to the expiration or termination of the lease and the Consumer Price Index 120 days prior to the date the lease was entered into.
Any rental increase at a time other than at the expiration of a a lease or termination of a periodic lease shall be void. Any rental increase in excess of that authorized by the provisions of this section shall be void.
Any landlord seeking an increase in rent shall notify the tenant of the calculations involved in computing the increase, including the Consumer Price Index at the date of entry of the lease, the Consumer Price Index 120 days before the expiration of the lease, the allowable percentage increase and the allowable rental increase.
[4] Hutton Park Gardens v. West Orange Town Council (A-171) was certified on plaintiffs' petition while pending unheard in the Appellate Division pursuant to R. 2:12-2. 67 N.J. 90 (1975). Cosden v. Wayne Tp. (A-173) was certified on plaintiffs' petition following final judgment in the Appellate Division. 67 N.J. 93 (1975).
[5] See, e.g., Helmsley v. Fort Lee, 362 F. Supp. 581 (D.N.J. 1973); Leone Management Corp. v. Bd. of Comm'rs, West N.Y. 130 N.J. Super. 569 (Law Div. 1974); Barry Gardens v. Passaic, 130 N.J. Super. 369 (Law Div. 1974); Albigese v. Jersey City, 127 N.J. Super. 101 (Law Div. 1974) modified 129 N.J. Super. 567 (App. Div. 1974); Woodcliff Management v. Tp. of North Bergen, 127 N.J. Super. 123 (Law Div. 1974); Inganamort v. Fort Lee, 131 N.J. Super. 558 (Ch. Div. 1974).
[6] See Levy Leasing Co. v. Siegel, 258 U.S. 242, 247, 42 S.Ct. 289, 291, 66 L.Ed. 595, 603 (1922), where the United States Supreme Court held:

... that there is no such inherent difference in property in land, from that in tangible and intangible personal property, as exempts it from the operation of the police power in appropriate cases and in both the Marcus Brown [Marcus Brown Holding Co. v. Feldman, 256 U.S. 170, 41 S.Ct. 465, 65 L.Ed. 877] and Block Cases [Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865], supra, it was held, in terms, that the existing circumstances clothed the letting of buildings for dwelling purposes with a public interest sufficient to justify restricting property rights in them to the extent provided for in the laws in those cases objected to.
[7] Local regulation of the prices of many commodities was common throughout the seventeenth and eighteenth centuries. See, e.g. Bridenbaugh, Cities in the Wilderness: The First Century of Urban Life in America 1625-1742, 49-52, 201-3, 354 (1938); Harrington, The New York Merchant on the Eve of the Revolution, 282-84 (1934), Lawrence, A History of American Law 65 (1973). The extent to which such local regulation continued in the nineteenth century is a largely unexplored historical question, Lawrence, supra at 157. But see Mobile v. Yuille, 3 Ala. 137 (Ala. Sup. Ct. 1841) (upholding municipal regulation of price of bread); cf. Hudson Cty. Chosen Freeholders v. State, 24 N.J.L. 718 (E. & A. 1853) (discussing county regulation of ferry rates). The United States Supreme Court first passed on the constitutionality of state price control statutes in Munn v. Illinois, 94 U.S. 113, 24 L.Ed. 77 (1877) and Peik v. Chicago & N.W.R. Co., 94 U.S. 164, 24 L.Ed. 97 (1877) and gave them its almost unqualified approval. The Court, however, steadily retreated from this position through the 1920s and until its decision in Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934), in which it reverted to its prior position and once again placed a broad constitutional imprimatur upon governmental regulation of prices.
[8] Jamouneau v. Harner, supra, would, on its face, appear to be inconsistent with this conclusion in that it predicates the validity of rent control on the existence of an "emergency." Id., 16 N.J. at 514. Closer examination of that case, however, reveals that the apparent inconsistency is entirely one of semantics. The plaintiffs challenged the State Rent Control Act of 1953, L. 1953, c. 216, codified as N.J.S.A. 2A:42-14 et seq. on the grounds that no emergency existed. Id. at 513. The Court held that the plaintiffs had the burden of proving the non-existence of an emergency rather than the municipality having the burden of proving the existence of emergency. The proofs of non-existence of emergency demanded of plaintiffs by the Court consisted of a factual showing that would preclude the possibility that the Legislature could rationally have concluded that a housing shortage existed. Id. at 515-18. Despite the use there of the term "emergency," this was no more than a requirement that the effect of the law be rationally related to some public welfare purpose which the Legislature, under an existing set of facts, could reasonably be assumed to have had within its contemplation, the standard of review under principles of substantive due process applied to all legislation. See 68 N.J. at 563 infra.

However, a contrary result was recently reached in an intermediate appellate court decision in California. Birkenfeld v. City of Berkeley, 122 Cal. Rptr. 891 (Cal. App. 1975). In Birkenfeld, the court noted that appellants had raised the argument that, under Nebbia v. New York, supra and related cases, the existence of a housing emergency is not required in order to uphold the constitutionality of rent control legislation. However, having recognized this argument, the court failed to discuss it but instead held that the validity of the Berkeley rent control provision "must be judged in light of its stated purpose," to wit: to impose rent controls to deal with a "serious public emergency." Id. at 899. The court then went on to explain that rent control should be treated as an "emergency" measure since it "tends to exacerbate a shortage of rental housing" by discouraging "the construction of new rental units and the replacement of old, deteriorated rental units." Id. at 899. While these statements may be true, the weight to be given to such considerations must be left to the legislative body. The sole task of the Court is to determine whether the legislation is without a reasonable supporting factual basis viewed as a police power measure. In any event, as will be more thoroughly discussed in Troy Hills Village, supra at Point II, protection of a landlord's investment is adequately provided by the requirement that rent leveling ordinances permit recovery of a "just and reasonable" rate of return.
[9] Defendant municipalities contend that the "just and reasonable" standard is applicable only to public utilities, observing that landlords are not subject to the correlative public duties imposed upon public utilities and are free to abandon the business whenever they choose. Cf. N.J.S.A. 2A:18-61.1. We recognize that this view is not wholly without historical basis, cf. Munn v. Illinois, supra, and that a number of courts have distinguished various types of governmental price regulations, including rent control, from utility regulation on the grounds that the operator is free to leave the business. Bowles v. Willingham, supra, 321 U.S. at 517, 64 S.Ct. at 648, 88 L.Ed. at 904; Block v. Hirsh, supra, 256 U.S. at 157, 41 S.Ct. at 460, 65 L.Ed. at 871; Munn v. Illinois, supra, 94 U.S. at 126, 24 L.Ed. at 84; Gentry v. Howard, 365 F. Supp. 567, 573 (W.D. La. 1973).

Nonetheless, we reject this contention as being both unsound in principle and unsupported by contemporary judicial authority. The supposed freedom of landlords to abandon the business is largely illusory. Although in theory the owner of a large apartment building may convert it to other uses or tear it down and construct something else in its place, in practice such a course is ordinarily economically prohibitive, and to force it would be confiscatory. Nor, if the permissible rents are set significantly below what is just and reasonable, is he likely to be able to find a buyer willing to pay a reasonable price. The fictitious character of the argument has long been recognized. E.g., Charles Wolff Packing Co. v. Court of Industrial Relations, 262 U.S. 522, 543, 43 S.Ct. 630, 635, 67 L.Ed. 1103, 1111 (1923); Mora v. Mejias, 223 F.2d 814, 817 (1 Cir.1955).
[10] We note that the ordinances at issue in the present case contain no provision permitting a landlord to appeal to the municipal rent leveling commission for relief if he is unable to obtain a "fair and equitable" return, such as appears in the ordinance considered in Brunetti v. New Milford, 68 N.J. 576, 590 n. 16, (1975) also decided today. Nonetheless, we have held that all rent control ordinances are to be read to permit property owners to apply to the local administrative agency for relief on the ground that the regulation precludes a fair and just rate of return. Therefore, the doctrine of exhaustion of administrative remedies, R. 4:69-5, as discussed in Brunetti v. New Milford, supra at Point II applies here.