**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2340-15T4


MGM JACKSON, LLC, FOUNTAINHEAD
PROPERTIES, INC., SHADY LAKE PARK,
INC., LAND O'PINES, INC., and
JACKSON ACRES, LLC,

       Plaintiffs-Appellants,

v.

JACKSON TOWNSHIP RENT LEVELING
BOARD, TOWNSHIP OF JACKSON and
TOWNSHIP COUNCIL OF THE
TOWNSHIP OF JACKSON,

       Defendants-Respondents.

_____

Argued September 18, 2017 — Decided November 16, 2017

Before Judges Messano and Accurso.

On appeal from Superior Court of New Jersey,
Law Division, Ocean County, Docket No. L-1058-
14.

Lori C. Greenberg argued the cause for
appellants.

Brian E. Rumpf argued the cause for respondent
Jackson Township Rent Leveling Board.

                    Robin La Bue argued the cause for respondent
                    Township of Jackson, Township Council of
                    Township of Jackson (Gilmore & Monahan, PC,
                    attorneys; Ms. La Bue, on the brief).

PER CURIAM

Plaintiffs, MGM Jackson, LLC, Fountainhead Properties, Inc., Shady Lake Park, Inc., Land O'Pines, Inc., and Jackson Acres, LLC, are the owners of mobile home parks located in the Township of Jackson (Jackson). They filed a complaint in lieu of prerogative writs against Jackson and the Jackson Township Rent Leveling Board (the Board), challenging Ordinance 05-14.[1] Prior to 2014, Jackson's rent control ordinance for mobile home parks permitted partial vacancy decontrol, allowing a landlord, upon the occurrence of a vacancy, to charge the successor tenant the lower of "$125 more than the prior tenant's rent, or a new rent which [was] no higher than 7.5% more than the highest rent in the park." Ordinance 05-14 capped the amount of any rental increase upon a vacancy at "no higher than 7.5% of the highest rent in the park added to the prior tenant's rent."

Additionally, plaintiffs challenged Jackson's passage of Ordinance 08-15, which corrected an administrative oversight from

---

[1] The Board's brief states that in 2001, the separate rent leveling boards for apartments and mobile home parks were dissolved and reconstituted as a combined board known as the Apartment and Mobile Home Park Rent Leveling Board.

the passage of an earlier ordinance in 2010. Prior to 2010, the ordinance prohibited owners and tenants of mobile home parks or residential properties from serving on the Board. Essentially, Ordinance 08-15 required one member and one alternate on the nine-member Board to be tenants at mobile home parks and tenants in rental or housing units.

Plaintiffs' complaint alleged both Ordinance 05-14 and Ordinance 08-15 were invalid, arbitrary, and capricious, violated the Equal Protection and Due Process Clauses of the Constitution, and resulted in an unlawful taking of property without just compensation, all violations enforceable by 42 U.S.C.A. § 1983. Plaintiffs also alleged that two members of the Board, Garold Miller and Ray Schleckser, tenants of plaintiff MGM Jackson's mobile home park, had financially benefitted from the change in the ordinance, for which they had provided public support. Jackson and the Board filed their answers.

Plaintiffs called three witnesses at a hearing before Judge Marlene Lynch Ford, after which the judge considered the oral arguments of the parties. Judge Ford reserved decision for thirty days to permit plaintiffs to supplement the record with official minutes from the meetings of Jackson's governing body.[2] Judge

---

[2] Judge Ford received a CD containing the minutes of various Board meetings.

Ford then issued a comprehensive written decision, concluding plaintiffs' complaint lacked any merit and factual support. She entered the order under review dismissing plaintiffs' complaint with prejudice. This appeal followed.

Before us, plaintiffs renew many of the same arguments made before Judge Ford. They contend the 7.5% cap is arbitrary, capricious and unreasonable, lacks any reasonable relationship to a "proper legislative purpose," and violates equal protection because it subjects one class of tenants to burdens not imposed on other tenants. Lastly, plaintiffs allege the two tenant Board members were in a direct conflict of interest.

We have considered these arguments in light of the record and applicable legal standards. We affirm.

Our courts have long recognized a municipality's authority to enact rent control ordinances pursuant to its police powers. Inganamort v. Bor. of Fort Lee, 62 N.J. 521, 535-36 (1973). "However, all 'police-power legislation is subject to the constitutional limitation that it be not unreasonable, arbitrary, or capricious, and that the means selected by the legislative body shall have real and substantial relation to the object sought to be attained.'" N.J. Shore Builders Ass'n v. Twp. of Jackson, 199 N.J. 38, 54-55 (2009) (quoting 515 Assocs. v. City of Newark, 132 N.J. 180, 185 (1993)).

Every "ordinance is entitled to a presumption of validity, and the 'party challenging the ordinance bears the burden of overcoming that presumption.'" 388 Route 22 Readington Realty Holdings, LLC v. Twp. of Readington, 221 N.J. 318, 339 (2015) (quoting Rumson Estates, Inc. v. Mayor & Council of Bor. of Fair Haven, 177 N.J. 338, 350 (2003)).

> The presumption of validity "can be overcome only by proofs that preclude the possibility that there could have been any set of facts known" or assumed to be known by the drafters that would, in the exercise of reason and common sense, have allowed them to conclude that the enactment would advance the interest sought to be achieved.
>
> [N.J. Shore Builders, supra, 199 N.J. at 55 (quoting Hutton Park Gardens v. Town Council of West Orange, 68 N.J. 543, 565 (1975)).]

"The job of a reviewing court is not to weigh the evidence for or against an enactment, or to evaluate the wisdom of the policy choice made." Id. at 55-56 (citing Hutton Park Gardens, supra, 68 N.J. at 565).

The Supreme Court has adopted a three-part analysis for any challenge to a rent control ordinance. Orange Taxpayers Council v. City of Orange, 83 N.J. 246, 255 (1980). First, we examine "whether the legislative body could rationally have concluded that the unrestrained operation of the competitive market was not in the public interest." Ibid. (quoting Hutton Park Gardens, supra,

68 N.J. at 564). Second, we consider "whether the regulatory scheme when examined in its entirety permits a 'just and reasonable return' to the owners of rental properties." Ibid. (quoting Hutton Park Gardens, supra, 68 N.J. at 568-69). Lastly, we examine whether the means adopted to accomplish the ordinance are rationally related to its purpose. Ibid.

Here, Jackson enacted rent control for the first time in 1973 because of "exorbitant, speculative, and unwarranted" rental increases. In 2008, it enacted complete vacancy decontrol, but soon thereafter, in 2010, adopted the vacancy decontrol formula that permitted increases that were the lower of $125 or 7.5% of the highest rent in the park. Although not entirely clear from the record, this quick turnaround obviously reflected discontent with the consequences of total vacancy decontrol, and plaintiffs acknowledged, in their complaint, this partial vacancy decontrol formula adopted in 2010 was "the subject of much debate and negotiation" with Jackson.

Applying the three-part analysis mandated by Orange Taxpayers Council to these facts, Ordinance 08-15 reflects Jackson's continued determination that the "unrestrained operation of the competitive market was not in the public interest." Orange Taxpayers Council, supra, 83 N.J. at 255. Thus, limiting the amount of increase permitted when there was a vacancy, as opposed

to total vacancy decontrol, was "rationally related" to the purpose of rent control. Ibid. Plaintiffs never asserted or proved the increase permitted by Ordinance 08-15 denied them a fair rate of return. Ibid.

Rather, plaintiffs' argument is that the increases permitted by Ordinance 08-15 will never equalize the rents within a given mobile home park. Perhaps, but neither would the formula plaintiffs negotiated with Jackson in 2010, and to which they never objected. Nor is there any authority cited by plaintiffs that a rent control ordinance must, as one of its goals, move all rents closer to the same amount. In short, plaintiffs' dissatisfaction with Jackson's decision to scuttle the 2010 negotiated partial vacancy decontrol provision in favor of a different formula does not prove the municipal action was arbitrary, capricious and unreasonable.

Plaintiffs' constitutional claims are also unavailing. They contend Ordinance 05-14 violates equal protection because it "subjects some similarly situated tenants to burdens not imposed on other members of the same class." In other words, those tenants at a higher rent within a given mobile home park who wish to sell their home are disadvantaged compared to owners at a lower rent who also might wish to sell.

A-2340-15T4

This argument lacks sufficient merit to warrant extensive discussion.  R. 2:11-3(e)(1)(E).  We add only the following.

As the Court said many years ago:

> The equal protection clause of the Fourteenth Amendment does not deprive the State of the power to classify in the adoption of police laws, but allows wide discretion, precluding only that done without any reasonable basis and therefore purely arbitrary.  The constitutionality of a legislative classification is presumed, and one who assails the classification must carry the burden of showing its arbitrariness.  A classification having some reasonable basis is not invalid merely because it is not made with mathematical nicety or because in practice it results in some inequality.  And the classification must be upheld if any set of facts can reasonably be conceived to support it.  In short, the equal protection clause forbids only invidious discrimination.
>
> [Pleasure Bay Apartments v. City of Long Branch, 66 N.J. 79, 93 (1974) (quoting David v. Vesta Co., 45 N.J. 301, 314-15 (1965)).]

In Property Owners Association v. Township of North Bergen, 74 N.J. 327, 330-32 (1977), a case plaintiffs cite, the owners of rental properties challenged an ordinance that created a special class of tenants, i.e., those over the age of sixty-five whose income did not exceed $5000.  The Court held that while a class of "economically needy senior citizens is sound, proper and sustainable as a rational classification," "compell[ing] subsidization by landlords or by tenants who happen to live in an

apartment building with senior citizens is an improper and unconstitutional method of solving the problem." Id. at 339.

Here, however, Ordinance 05-14 creates no classification amongst mobile home park dwellers. It imposes the same limit on rental increases whenever there is a vacancy. The ordinance did not create whatever differences existed between two tenants in the same park prior to its enactment.[3]

We construe the arguments plaintiffs make in Points IV and V of their brief as asserting that Ordinance 05-14 violates substantive due process rights. The Court defined the issue in Hutton Park Gardens:

> It follows . . . that legislative enactments regulating prices, including municipal rent control ordinances, are subject to the same narrow scope of review under principles of substantive due process as are other enactments under the police power: could the legislative body rationally have concluded that the enactment would serve the public interest without arbitrariness or discrimination?
>
> In the context of price regulation the question is whether the legislative body could rationally have concluded that the unrestrained operation of the competitive market was not in the public interest.
> [Hutton Park Gardens, supra, 68 N.J. at 563-64 (citations omitted).]

---

[3] We fail to understand, and plaintiffs do not explain, why some of these disparities in rent were not the natural effect of total vacancy decontrol, which existed in Jackson between 2008 and 2010.

In order to prevail, plaintiffs needed to prove that no set of facts would rationally support a conclusion that the enactment of Ordinance 05-14 was in the public interest. Id. at 565. Plaintiffs failed to prove that Jackson's continued decision to curb "exorbitant, speculative, and unwarranted" rent increases in the mobile home market that existed forty years ago, by continuing rent control but permitting limited vacancy decontrol, lacked any rational basis.

Lastly, plaintiffs argue that members of the Board improperly influenced passage of the ordinances at issue. They claim that as residents of a mobile home park, Miller and Schleckser had inherent personal conflicts of interest with the other tenants in mobile home parks. This argument also lacks sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Plaintiffs do not claim that Miller and Schleckser inappropriately exercised their powers as Board members, for example, on applications that came before the Board filed by plaintiffs or other mobile home park owners. Moreover, the ordinances were passed by the municipal council, not the Board. Plaintiffs also provide no authority supporting the proposition that Miller and Schleckser were required to forfeit their rights as citizens to speak freely and petition their municipal government

simply because they benefitted from the proposed changes or were members of the Board.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2340-15T4