796 A.2d 874

TOWNSHIP OF FRANKLIN, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. DAVID DEN HOLLANDER, GARDEN STATE GROWERS AND QUAKER VALLEY FARMS, DEFENDANTS–RESPONDENTS.

Argued January 14, 2002—Decided May 20, 2002.

*Eric Martin Bernstein* argued the cause for appellant (*Eric M. Bernstein & Associates,* attorneys; *Mr. Bernstein* and *Susan R. Rubright,* on the briefs).

*Robert P. Merenich* argued the cause for respondents (*Gemmel, Todd & Merenich,* attorneys).

*Craig M. Goodstadt* argued the cause for *amicus curiae* Planning Board of the Township of Holmdel (*Kirkpatrick & Lockhart,* attorneys; *John M. Marmora,* of counsel).

*Eileen P. Kelly,* Deputy Attorney General, argued the cause for *amicus curiae* State Agriculture Development Committee (*John J. Farmer, Jr.,* Attorney General of New Jersey, attorney; *Patrick DeAlmeida,* Deputy Attorney General, of counsel).

*Arthur A. McTighe* submitted a brief on behalf of *amicus curiae* New Jersey Farm Bureau (*McTighe & McTighe,* attorneys).

The opinion of the Court was delivered by

ZAZZALI, J.

The Township of Franklin filed a complaint in the Superior Court against defendants, the owners of an ornamental plant production operation, alleging that defendants' operation violated several local land use ordinances. The litigation involves the relationship between commercial farming activities as defined by the Right to Farm Act, *N.J.S.A.* 4:1C–1 to–10 (Right to Farm Act or Act), and the right of municipalities to enforce local zoning and land use ordinances enacted pursuant to the Municipal Land Use Law, *N.J.S.A.* 40:55D–1 to–129 (MLUL).

■ The Appellate Division held that the Right to Farm Act preempts municipal land use authority over commercial farms. *Township of Franklin v. den Hollander,* 338 *N.J.Super.* 373, 375, 769 *A.*2d 427 (App.Div.2001). We affirm the judgment of the Appellate Division for the reasons expressed in Judge Carchman's thorough and persuasive opinion. We add only the following.

I

The Legislature has reposed trust in the County Agricultural Boards (CAB) and the State Agricultural Development Committee (SADC) to make the appropriate decisions in respect of whether the operation of a commercial farm implicates agricultural management practices, and, if so, whether those practices affect or threaten public health and safety.

We have spoken previously on similar issues in other contexts. In *Rutgers v. Piluso*, 60 *N.J.* 142, 158, 286 *A.2d* 697 (1972), we held that the Legislature did not intend the growth and development of Rutgers University to be subject to restriction or control by local land use regulations. We noted, however, that "such immunity ... is not completely unbridled" and must not "be exercised in an unreasonable fashion so as to arbitrarily override all important legitimate local interests." *Id.* at 153, 286 *A.2d* 697 (citing *Washington Twp. v. Village of Ridgewood*, 26 *N.J.* 578, 584–86, 141 *A.2d* 308 (1958)). In *Garden State Farms, Inc. v. Bay*, 77 *N.J.* 439, 455, 390 *A.2d* 1177 (1978), this Court held that although the State Commissioner of Transportation had the ultimate authority concerning the placement of aeronautical facilities such as helistops and heliports, the Commissioner must give due attention to local interests. There, Justice Handler stated that "a failure on the Commissioner's part to weigh conscientiously local interests, to examine carefully whether the proposed [aviation] facility is compatible with the surrounding land uses and to consult the local ordinances and authorities in making its licensing decision *would constitute an abuse of discretion.*" *Id.* at 456, 390 *A.2d* 1177 (emphasis added). He explained:

Especially probative of the vital interests of local government is the municipal zoning ordinance itself.... Clearly [the Commissioner] should, at the very least, acknowledge the relevance of the local zoning ordinance with respect to applications for private heliports and helistops. To this we would add as a material consideration that the Commissioner ought to take into account whether an applicant for a private heliport has availed itself of any right to a variance under the local zoning law and whether an application for a variance should be pursued as a helpful procedure for fleshing out the impact of the proposed facility upon neighboring land uses.

[*Id.* at 455, 390 *A.*2d 1177.]

■ Finally, in *Holgate Property Associates v. Township of Howell*, 145 *N.J.* 590, 679 *A.*2d 613 (1996), after according substantial deference to the Department of Environmental Protection (DEP) as the administrative agency charged with the regulation of the operations of entities disposing of sludge products, we concluded that "there is an implied duty on the part of the DEP to consider local concerns that will be affected by the operation at the proposed site." *Id.* at 601, 679 *A.*2d 613. Again, Justice Handler stated:

> We conclude that the DEP should give notice to affected municipalities and to consider their public health and safety concerns and zoning and land-use regulations when deciding whether a facility using SDPs will be exempt from permitting requirements. The failure to do so raises the risk that the DEP's ultimate decision will not give sufficient weight to relevant matters affecting appropriate land uses and public health and safety. Such a decision would constitute an abuse of discretion.

[*Id.* at 603, 679 *A.*2d 613.]

Echoing those concerns, the Appellate Division cautioned that there are risks that attend the broad decision-making authority that the agricultural boards now possess:

> It is not difficult to envision a scenario, as suggested by plaintiff here, *where a commercial farm operator may seek to extend what appears to be an accepted agricultural management practice to such an extent that it is so violative of local land use ordinances as to be beyond the ken of reasonable conduct* despite falling within the scope of the Act. In such instances, *the CAB or SADC cannot disregard such ordinances and the impact of agricultural management practices in such context.*

> [den *Hollander, supra,* 338 *N.J.Super.* at 391, 769 *A.*2d 427 (emphasis added).]

In other words, although the CAB and the SADC have primary jurisdiction over disputes between municipalities and commercial farms, the boards do not have *carte blanche* to impose their views. Because the authority of the agricultural boards is not unfettered when settling disputes that directly affect public health and safety, the boards must consider the impact of the agricultural management practices on public health and safety and "temper [their] determinations with these standards in mind." *Id.* at 392, 769 *A.*2d 427 See also *Village of Ridgefield Park v. New York, Susquehanna, & W. Ry. Corp.*, 163 *N.J.* 446, 460–61, 750 *A.*2d 57

(2000) (declining to determine preemptive effect of Interstate Commerce Commission Termination Act of 1995 and adjudicate town's nuisance claim against railroad, but holding that railroad must consider town's ordinances in respect of public health and safety when undertaking certain activities).

As a general rule the threshold question will be whether an agricultural management practice is at issue, in which event "the CAB or SADC must then consider relevant municipal standards in rendering its ultimate decision." de*n Hollander, supra,* 338 *N.J.Super.* at 393, 769 *A*.2d 427. There will be those cases where the local zoning ordinance simply does not affect farming. There will be other disputes where, although the ordinance has a peripheral effect on farming, it implicates a policy that does not directly conflict with farming practices. In such cases greater deference should be afforded to local zoning regulations and ordinances. Even when the CAB or SADC determines that the activity in question is a generally accepted agricultural operation or practice according to *N.J.S.A.* 4:1C–10.1(c), the resolution of that issue in favor of farming interests does not vest the board with a wide-ranging commission to arrogate to itself prerogatives beyond those set forth in the Act. The boards must act in a matter consistent with their mandate, giving appropriate consideration not only to the agricultural practice at issue, but also to local ordinances and regulations, including land use regulations, that may affect the agricultural practice. *Id.* at 390–391, 769 *A*.2d 427.

Examples invest those abstract principles with meaning. A farmer may seek to erect a 150–foot silo in a municipality where there is a 50–foot height limitation, or he may wish to construct a barn with a 50–foot sideyard, but the local ordinance requires 100 feet. On the face of it, such ordinances do not interfere with farming and, therefore, the zoning ordinance limitations ordinarily should be respected. However, some cases may present closer questions. Assume a farmer intends to erect a barn that is 60 feet tall, but the local ordinance prohibits structures exceeding 50 feet. The town may contend that 50 feet is more than sufficient for the

barn's height, but the farmer may be able to demonstrate a legitimate, agriculturally-based reason for needing the extra space.

The point of those examples is that a fact-sensitive inquiry will be essential in virtually every case. Agricultural boards will have to deal with an array of matters that are within the traditional jurisdiction of local authorities such as hours of operation, lighting, signage, ingress and egress, traffic flow, and parking, to name just a few. In those circumstances boards must take into account the interests of farmers, while simultaneously "consider[ing] the extent of [the] use [of agricultural management practices] and consider the limitations imposed on such uses by a municipality." *Id.* at 392, 769 *A.*2d 427. See also *Cappture Realty Corp. v. Board of Adj.,* 133 *N.J.Super.* 216, 224–25, 336 *A.*2d 30 (App.Div.1975) (holding that municipality may forbid uses that create noxious emissions such as odor, dust, smoke, or gas "dangerous to the health or safety of residents"); *N.J.S.A.* 40:55D–38 (setting forth appropriate considerations for subdivision or site plan approval including concerns relating to public health and safety).

## II

We recognize that the task before the agricultural boards is complex. Agricultural activity is not always pastoral. The potential for conflict between farming interests and public health and safety exists. Nevertheless, we repose trust and discretion in the agricultural boards to decide carefully future disputes on a case-by-case basis and to balance competing interests. We are confident that the boards will conduct those proceedings and reach their determinations in good faith, cognizant that the benchmark for those decisions is the understanding that government has an obligation to deal forthrightly and fairly with property owners and their neighbors. *Citizens for Equity v. Department of Envtl. Prot.,* 126 *N.J.* 391, 397, 599 *A.*2d 507 (1991).

Affirmed.

*For affirmance*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA, and ZAZZALI—7.

*Opposed*—None.