**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0538-18T3

DEMAREST FARM AND
ORCHARD, LLC,

     Plaintiffs-Appellants,

v.

BOROUGH OF HILLSDALE
MAYOR AND COUNCIL,

     Defendants-Respondents.

_____

Argued February 26, 2020 – Decided March 12, 2020

Before Judges Fuentes, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5016-17.

Eric Victor Kleiner argued the cause for appellants (Lawrence H. Kleiner LLC, and Eric V. Kleiner, attorneys; Eric Victor Kleiner and Lawrence Herman Kleiner, on the briefs).

Raymond R. Wiss argued the cause for respondents (Mark Daniel Madaio, and Wiss & Bouregy, PC, attorneys; Raymond R. Wiss and Thomas Kevin Bouregy, on the brief).

PER CURIAM

Plaintiff Demarest Farm and Orchard, LLC (the Farm), appeals from an August 21, 2018 order dismissing its complaint with prejudice. We affirm.

The Farm operates in Hillsdale and is one of the only pick-your-own (PYO) apples and autumn celebration facilities in Bergen County. It attracts thousands of patrons each fall season. The Farm has 215 on-site parking spaces. Due to the large number of visitors participating in the Farm's activities during the fall season, the Farm cannot accommodate all its patrons with on-site parking. Therefore, it traditionally utilized off-site and street parking during peak periods.

Unfortunately, by 2015, the Farm lost access to additional parking spaces in the vicinity, including spaces at a school parking lot and a seven-acre private property. Based on safety concerns arising from the Farm's lack of adequate parking, in October 2016, the Borough of Hillsdale (Borough) passed Emergency Resolution 16227. This resolution authorized the Hillsdale Police Department to implement emergency road closures and no parking on the streets near the Farm between 7:00 a.m. and 6:00 p.m. during the fall harvest season.

In 2016, the Borough held a public bid for 250 parking spaces located in a municipal parking lot near the Farm and received no bid responses. In 2017,

A-0538-18T3

the Farm bid $.95 per day for this municipal parking lot. This bid was accepted by the Borough.

In January 2017, the Farm filed an action with the Bergen County Agricultural Development Board (BCADB) to allow its customers to park on the Borough's streets as designated "Farm Parking." The Farm applied to the BCADB for review of a Site Specific Agricultural Management Plan pursuant to the Right to Farm Act (RTFA), N.J.S.A. 4:1C-1 to -10.4. The Borough also filed a complaint with the BCADB, based on the RTFA. The Farm's pedestrian safety expert issued a report, opining "there is [no] cause for concern with respect to pedestrian safety during the PYO Season if the Event Management Plan is followed."

At hearings conducted before the BCADB between May and August 2017, the Farm's principal testified the Farm required a minimum of 1225 parking spaces per day during PYO season. The Farm also presented testimony from a pedestrian safety expert, a traffic engineering expert, and experts on land preservation, conservation, open space planning, and economic development.

Before the BCADB, the Borough presented the testimony of Police Chief Francaviglia. He testified the number of cars attending the Farm's fall festivities was overwhelming and the traffic was "out of control and negatively impacted

the Borough's residents." The Chief stated the Farm attracted so many visitors that the Borough was unable to safely handle the situation. Similarly, the Mayor, Douglas Frank, presented a slide show reflecting the Farm's insufficient parking and testified the lack of adequate Farm parking created safety concerns for the Borough's residents and Farm customers. Finally, the BCADB heard public comments on the matter.

On June 8, 2017, the Borough's governing body introduced Ordinance 17-09 to permanently prohibit street parking near the Farm. The ordinance (Ordinance 17-09) purported to make permanent the emergency resolution. The ordinance prohibited street parking near the Farm on "Saturdays, Sundays and [h]olidays between 9:00 a.m. and 5:00 p.m. from August 30th until October 30th." On June 13, 2017, Ordinance 17-09 was adopted at the Council's public meeting. Mayor Frank did not vote on the ordinance.

On September 6, 2017, the BCADB issued Resolution 2017-01, which ruled that the Farm would be awarded temporary relief from the Borough's parking restrictions. The BCADB resolved to divide the area surrounding the Farm into four quadrants, and allowed parking on a rotating basis from 2017-2019, with all street parking to end by 2020. Neither party appealed the BCADB's decision.

In 2017, the Farm did not use any public streets or Borough parking for customer parking. Instead, it secured the use of 900 off-site parking spaces in another municipality. In July 2017, the Farm filed an order to show cause and verified complaint in lieu of prerogative writs seeking to invalidate the ordinance. On August 21, 2018, the trial court dismissed the complaint with prejudice, finding the challenged ordinance was not arbitrary, capricious, or unreasonable.

On appeal, the Farm argues the trial court erred in dismissing its complaint. The Farm contends the ordinance is arbitrary and capricious because it is contrary to "fundamental principles of municipal legislation," cannot be reconciled with the RTFA, is "confiscatory [in] nature," demonstrates bias against the Farm and its patrons, and was passed without the Borough conducting any professional studies or securing an expert opinion. After a careful review of the record, we find these arguments unavailing.

"Municipalities have the power and authority to enact ordinances in support of the police power." Hutton Park Gardens v. Town Council of W. Orange, 68 N.J. 543, 564 (1975). These ordinances, "like statutes, carry a presumption of validity." Ibid. This presumption places a high burden on the party seeking to overturn the ordinance. Ibid. In fact, a party seeking to

5

invalidate an ordinance must demonstrate by clear and convincing evidence that the ordinance is arbitrary and capricious. New Jersey Shore Builders Ass'n v. Twp. of Jackson, 199 N.J. 38, 54-55 (2009).

"Legislative bodies are presumed to act on the basis of adequate factual support and, absent a sufficient showing to the contrary, it will be assumed that their enactments rest upon some rational basis within their knowledge and experience." Hutton Park Gardens, 68 N.J. at 564-65. All police-power legislation, however, is "subject to the constitutional limitation that it be not unreasonable, arbitrary, or capricious, and that the means selected by the legislative body shall have real and substantial relation to the object sought to be attained." 515 Assocs. v. City of Newark, 132 N.J. 180, 185 (1993) (citing Bonito v. Mayor and Council of Bloomfield, 197 N.J. Super. 390, 398 (Law Div. 1984)).

N.J.S.A. 40:48-2 allows municipalities to enact ordinances that

> it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law.

A-0538-18T3

When a municipality determines the most feasible manner of "curing traffic evils and traffic congestion in a specific area, and such regulation bears a direct relationship to the public safety, such determination is reasonable and not arbitrary." Cedar Grove v. Sheridan, 209 N.J. Super. 267, 279 (App. Div. 1986).

"The job of a reviewing court is not to weigh the evidence for or against an enactment, or to evaluate the wisdom of the policy choice made." New Jersey Shore Builders Ass'n, 199 N.J. at 56 (citing Hutton Park Gardens, 68 N.J. at 565). Accordingly, a court may not substitute its judgment for that of the municipal body unless it is proven that the Board's action was arbitrary, unreasonable or capricious. See Cell S. of N.J., Inc. v. Zoning Bd. of Adj. of W. Windsor Twp., 172 N.J. 75, 81 (2002); Medici v. BPR Co., 107 N.J. 1, 15 (1987).

Based on our de novo review, we are satisfied the Farm's complaint was properly dismissed as the challenged ordinance was reasonably related to the municipality's exercise of its obligation to promote the safety of its residents. The record shows the ordinance at issue was enacted to address concerns raised by the Hillsdale Police Department, elected officials, and residents regarding the safety risks posed by the lack of adequate parking for the Farm's patrons. In

fact, the ordinance passed only after the Borough first adopted an emergency resolution, which was supported by certifications from the Mayor and the Police Chief after they personally witnessed the worsening parking situation.

Mayor Frank confirmed he observed the area near the farm in October 2016 and saw the entire area "engulfed with vehicles and pedestrians." He noted the streets were crowded, impassable to emergency vehicles, and pedestrians were in danger. Moreover, Chief Francaviglia attested the situation near the Farm began to deteriorate rapidly in 2014 and 2015, as "the streets [were] full of vehicles and pedestrians, there is gridlock and no emergency vehicle access." The Chief warned "it [was] only a matter of time before someone [was] injured or killed." Further, the Chief cautioned that two Bergen County Sheriff's Officers, three Hillsdale officers, and a traffic officer could not guarantee safe access to the Farm and the surrounding area during PYO season in 2016, due to the overwhelming number of patrons at the Farm. The record also reflects the Borough worked with the Farm for several years to find a way to safely manage the Farm's parking and congestion issues during PYO season. Absent an alternative proposal that could adequately address the safety issues created by the Farm's inadequate parking facilities, the Borough passed Ordinance 17-09, but narrowly tailored the ordinance to alleviate the known safety risks.

A-0538-18T3

Accordingly, we perceive no basis to overturn the trial court's dismissal of the Farm's complaint.

To the extent the Farm argues the Mayor and Council were required to obtain expert reports or engage in professional studies before enacting the ordinance, we do not agree. Our Supreme Court confirmed "[i]t is entirely appropriate for a governing body to hear testimony from its citizens and to respond. Indeed, it may be that the testimony offered by those citizens, without expert analysis, will be sufficient [to enact an ordinance]." Riya Finnegan LLC v. Twp. Council of Twp. of S. Brunswick, 197 N.J. 184, 193 (2008).

The Farm next contends the ordinance may not be reconciled with the RTFA as it conflicts with the interests sought to be advanced by the RTFA. Again, we disagree.

As our Supreme Court observed, "[t]here will be those cases where the local [] ordinance simply does not affect farming. There will be other disputes where, although the ordinance has a peripheral effect on farming, it implicates a policy that does not directly conflict with farming practices." Twp. of Franklin v. Den Hollander, 172 N.J. 147, 152 (2002). Thus, a "fact-sensitive inquiry will be essential in virtually every case." Id. at 153. The Den Hollander Court provided an example to demonstrate that not all ordinances that may impact a

farm actually interfere with farming, such as when a farmer seeks to erect a silo taller than the municipal height limitation allows, or build a barn with a smaller side yard than permitted by a municipal ordinance. 172 N.J. at 153. The Den Hollander Court explained: "On the face of it, such ordinances do not interfere with farming and, therefore, the zoning ordinance limitations ordinarily should be respected." Id. at 152.

The Den Hollander Court also affirmed that the County Agricultural Board, by way of the RTFA, has primary jurisdiction to address a dispute between a farm owner and the municipality over alleged violations of the local municipal land use laws. Id. at 151. The Court added that while the agricultural boards have primary jurisdiction over such disputes, "the boards do not have carte blanche to impose their views." Ibid.

Under the RTFA, an "owner or operator of a commercial farm . . . which does not pose a direct threat to public health and safety may . . . . [p]rovide for the operation of a farm market, including the construction of building and parking areas in conformance with municipal standards." N.J.S.A. 4:1C-9(c). Consistent with its obligation, an agricultural board must assess a "direct threat to public health or safety" broadly, "not as a narrow limitation in considering complaints of an aggrieved party that local land use or other relevant ordinances

are being violated by the conduct of the commercial farm operator." Twp. of Franklin v. Hollander, 338 N.J. Super. 373, 394 (App. Div. 2001), aff'd, 172 N.J. 147 (2002).

Here, the BCADB "considered the relevant municipal public health and safety standards including those which might have a peripheral effect on farming but do not directly conflict with farming practices." The BCADB determined the Farm failed to justify its request for a permanent variance from the State's Agricultural Management Plan and that the "critical underlying issue [was] a continuous, annual increase in traffic and pedestrian volumes which creates negative impacts through a level of chaos and unmanageability [and there is] actionable concern over the unmitigated, negative impacts on the public health and welfare of the neighborhoods arising from the Farm's proposed use of municipal streets." Again, the BCADB's decision was not appealed by either party.

Although the Farm contends the trial judge erred by referring to the BCADB's conclusions in her decision, we do not agree. Rather, the trial judge clearly stated she was "not bound by the findings of the BCADB, nor [were] the findings of that Board before this court for review." Additionally, the judge remarked, "it is useful to the court to refer to that Board's resolution." Although

11

the judge was "persuaded by the reasoning of the BCADB, finding its decision to be based in fact, carefully considered, weighing the interests of all parties and stakeholders and coming to conclusions based upon the Right to Farm Act and State Agricultural Development Committee Regulations," the judge nevertheless engaged in an independent, thorough analysis before finding the Farm failed to meet its heavy burden to overturn the ordinance. We have no reason to second-guess her findings. Moreover, as Ordinance 17-09 does not directly interfere with farming practices but instead, addresses safety concerns, we are satisfied the trial judge correctly rejected the Farm's argument that the ordinance ran contrary to the legislative goals of the RTFA.

Since the Farm failed to demonstrate by clear and convincing evidence that Ordinance 17-09 was arbitrary or capricious, we affirm the trial judge's dismissal of the Farm's complaint with prejudice. The Farm's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0538-18T3